Our third case this morning is Legros v. Secretary, Department of Corrections. Ms. Strickland. Thank you, Your Honor. May it please the Court. This Court must reverse the judgment of the District Court because there is no reasonable argument that Mr. Legros' appellate counsel satisfied Strickland's deferential standard. I know this Court is familiar with the facts and the law, but I do want to clarify something about the record. Okay. The State says twice in its brief, quote, the video of the chase was taken from, the video of the chase taken from Officer Barr's patrol car was played to the jury. This is incorrect. There was not a video of the chase. There was no video of the chase played to the jury. The video that was admitted was a demonstrative exhibit to show what Officer Barr's car looked like, patrol car, with the lights flashing and the siren going. So there, and there's testimony from him specifically that there was no dash cam in his car and there was no body cam footage. So there's not a video that the jury saw of the chase. Counselor, admittedly, so these cases are difficult in part because the court in review has to exercise a lot of discipline when it comes to deferring to the factual findings. This could be a case in which a de novo review would have a different outcome. But given the standard of review or legal standard that we have to abide by, how do we jump from, I disagree with the decision, to this is an unreasonable, unlawful outcome? Yes, Your Honor, and I agree there's deference here to the state court decision. There's deference to the jury's finding. But I think in this case, it is so clear that there is not a showing of wanton disregard that it is not reasonable to say that there was not a reasonable probability of this being overturned on appeal. And that is the standard that this. All right. So the real issue is wanton disregard for the safety of persons or property, right? Yes, Your Honor. And this chase occurred at 3 a.m. Correct. Pitch black. I assume so, Your Honor. There wasn't. I mean, I'm not aware of any time where 3 a.m. has not been pitch black in Florida. Yes, Your Honor. I understand. But there was no testimony about the lighting, you know, full moon, no full moon, street lights. Yeah, I mean, common human experience would tell me that at 3 a.m. it's dark. Yes. And a very wooded path, right, a wooden path, right, wooded. A wooded area, yes, Your Honor. Yeah. Neither your client nor his passenger were wearing helmets. That's correct, Your Honor. And I think that actually supports my position. It's not a vehicle where a helmet is even required. It's not a dangerous vehicle. Yeah. It might be for someone who's riding on the back of it at 3 a.m. in a wooded area. See, that's the problem I'm having. I mean, one of the persons for whom there might be wanton disregard is his passenger. Well, Your Honor, I don't think that the passenger really makes a difference here because, I mean, is a passenger in danger on a scooter during the daylight? I'm not sure that the darkness changes the analysis here because— I think that does. I mean, candidate, which otherwise probably would have been a strong, more compelling case, I think that was the difference. There was no one really around. In this instance, you have literally a passenger. The cop catches up with the passenger, and the passenger says, I was scared. So how is that not, again, we might disagree with the outcome, but unreasonable? Your Honor, I don't think the passenger's subjective experience factors into the analysis. It's whether Mr. Legros was driving with a wanton disregard for the safety or property of others. And that includes, you know, knowledge that damage is likely to be done to persons of property. So you couldn't consider that testimony as supporting an inference of wanton disregard? I don't believe the testimony should have come in in the first place, but since it did come in, then no, Your Honor, I don't think his subjective experience changes the analysis because the focus is on Mr. Legros' driving. That is what the jury is supposed to be deciding. It's focused on his wanton disregard for the safety of others, one of whom is a passenger, a scared witness, as I would be. I understand the passenger says he is afraid, but there is nothing in the record that Mr. Legros is doing that actually put him in danger. He's driving down what is described as a path. He is going 20 to 25 miles an hour. Do we have a map or aerial photograph of what this territory looks like where he was driving? So, Your Honor, there was... All we can do is figure it out. That's all I can do is figure it out. It was not between houses where there's a little alleyway. They were going across driveways. To go across driveways, you've got to go across lawns. Sure, Your Honor. To answer your question, there was a map admitted at trial. It appeared to be an overhead map and then a street map. So there was a satellite map where they made clear that you can't really see the path because it is in a wooded area. And then there's a street map that the officer uses to show exactly where they went. I do not... I have not seen that in our record. I don't know that it was included in the record on appeal. I've looked through Respondent's Exhibit 7, which is the state court record, and it does not appear to be in there or appended to the transcript in any way. So that map does not appear to be available to us. If the court thinks that's important, the court could remand to complete the record, which is something the court has done in the past. I don't have that site at my fingertips, but the court has remanded to the district court for additional facts when the entire record was not available. So that is an option to the court. But I just... With this standard knowledge that damage is likely to be done with persons and property, the testimony is that he is going down a path. They say through yards and driveways, but there's nothing to say that he was weaving, that he had to avoid anything. Lake Grosse residence parallel to the ones he was crossing? It was along the path. So, Your Honor, it appears... But you've got a street going down and you've got these driveways. Parallel houses, I gather. It was cutting across. Yes. The description was... Where was his residence with regard to those? My understanding is that it's along the path that he was on. How far? I don't know that, Your Honor. That's not in the record. But, Your Honor... I thought there was evidence in the record that the scooter came within feet of homes, cars, trees, shrubs, and fences. The question was, how close did you get to driveways with vehicles and playgrounds in the yard, and the testimony was within a couple feet. Okay. But, again, Your Honor, he's going at 20 to 25 miles an hour. You know, it's dark, it's wooded, it's a dirt path. Something goes wrong within a couple of feet, you're within a few feet of stationary objects like that. I mean, I can understand why the passenger is scared. Yes, Your Honor, but the question is not whether hypothetically something could possibly go wrong. It's about whether it is likely. So, is that a legal question? Because that's the other thing in terms of our review. It could be that the findings can't be touched, but are you in any way challenging the court's interpretation of what constitutes wanton disregard? I mean, is there a question of law in the mix here that perhaps is stronger? Your Honor, which court are we? We don't have a reasoned opinion on this from the Florida courts, so I can't challenge their interpretation of it, but there are many Florida cases interpreting this, and that's another important point I want to make that goes to the reasonable likelihood of success of this claim on appeal, is this specific element, wanton disregard, is also an element of reckless driving, which is in the Hickior Homicide Statute. So there is a great deal of case law from the Florida courts, and there are many cases where they have overturned a jury's verdict. What we don't decide here is whether this was an incorrect understanding of Florida law. Your Honor, we are asking whether there was a reasonable basis to conclude that appellate counsel was ineffective. So when it gets down to it, it is an interpretation of Florida law because we are having to look at what the Florida court would have decided on appeal had it been presented to them on direct appeal. And the Florida courts routinely overturned jury verdicts on this. I direct the court to a 2014 case, Lizardo 147 SO 3D 1083, and it collects some cases, and it just shows how often that this is overturned. The latest one I found was in 2023, and there the defendant actually crossed over a dashed yellow line, passed three to five cars while driving in the wrong lane. Just a quick question, just to be clear, are you asking for any kind of evidentiary hearing? And if so, what would that evidentiary hearing possibly uncover? Your Honor, we would ask in the alternative if this court thinks that there is not enough to find that the deficient performance prong is met, that there could be a remand to allow appellate counsel to testify. However, I think it is so clear that he did not winnow this issue for any strategic reason based on the brief that he did file that I don't believe it's necessary, but that would be the subject of a possible remand. Okay, let's hear from Ms. Jensen. May it please the Court, good morning, Kirsten Jensen, Assistant Attorney General for the State of Florida, here on behalf of Secretary, Department of Corrections. Under AEDPA, the federal court can only grant federal habeas relief if the petitioner establishes that the conclusion of the state court was an unreasonable application of federal law or, clearly, by the United States Supreme Court, or based on an unreasonable determination of the facts. The Fifth District Court of Appeals in Florida received Mr. Lagros' petition alleging ineffective assistance of appellate counsel. We know all that. Isn't the simplest way to decide this case is to defer to the decision of the state courts on prejudice because you could reasonably conclude that there was one disregard for the safety of the passenger when this was a scooter, you know, zipping around at 25-30 miles an hour at 3 a.m. in a wooded area, coming within feet of all these obstacles we've mentioned earlier, and the passenger says that he was scared? Correct. The Fifth District Court of Appeals said, we know if this would have been raised, if this issue would have been raised on direct appeal, it would not have been successful, and the Fifth District has already told us that, and this court must defer to the state courts. If there's any fair-minded reason to think that relief could have been denied, we have to supply the reasons for it, right? Because we don't have a reasoned decision here, right? Correct. So... That's what Harrington requires, right? Correct. So the district court's rejection of his ineffective assistance of appellate counsel claim was reasonable, and that's what you're left with. Do you have any questions? No. Okay. Well, if there are no further questions... You ought to sit down. Thank you, Ms. Jensen, we understand your case. State requests that you affirm the district court's denial of his federal petition. Ms. Strickland, you have some time for rebuttal. Thank you, Your Honor. Your Honor, I am not arguing that there's no deference to the state court decision. I understand. I understand that the court has to apply deference, but this review 2254 is not completely toothless. You know, the Supreme Court has instructed Williams v. Taylor, if after carefully weighing all the reasons for accepting the state court judgment, the federal court is convinced that the prisoner's custody violates the Constitution, that independent judgment should prevail. I think here, even setting aside... I mean, I think candidate is a very close comparator here, but these other cases all show that what Mr. Legros did was not acting with a wanton disregard. Some of the cases from Florida emphasize whether or not the defendant was in control of the vehicle. There's no testimony that he was not in full control of his vehicle, no weaving, no... nothing to say that he was not in control of the vehicle. And that's true even where there are traffic violations. There are people running stop signs. There are people going 50 miles per hour in residential zones. And the Florida courts have said that it's not enough to actually put someone in danger. Here, we don't have any allegation of any sort of traffic violation. We have a vehicle that doesn't even go fast enough to require a helmet, and then he exercises the caution to slow down when he goes on the dirt road, going from about 30 miles per hour to 20 to 25 miles per hour. Well, exercise is loose. I mean, by then, he's being chased by the police officer, right? Yes, but he, in fact, slows down. But it takes the next day for the cop to actually find and arrest him. So, I mean, there's some evasion that's happening there. Yes, yes. Yes, he does not stop for the police. I will concede that. But this is not aggravated fleeing and eluding. This is just fleeing and eluding. And I think the speed is really important here, because I understand the argument that he is coming within feet of objects at some times. At 3 a.m.? Yes, at 3 a.m. With a passenger on the back. With a passenger. He has no helmet. And it's scared. I'm accepting all of that. Was the passenger got a hold of him around the midsection, is that what it was? That's what the officer described. He's kind of hugging him. Yes, yes. And to discharge the passenger, he's got to take his arms away and throw him off, I suppose. Right, right. And there's no testimony that the passenger was about to fall off or anything like that. No. We don't know if the passenger even knew where they were going. Right. Well, it appears... The passenger may have thought, because he was scared, he may have thought they're going as far as they did to go to get away from the police officer. Well, Your Honor, the record says that the passenger got dropped off at a house and then the police talked to him at the house. So I think the inference would be that that was where he was supposed to be going. But regardless, Your Honors, he was going... First and foremost, though, he wanted to elude the officer. Well, I mean, we can accept that. Yes, Your Honor. That's an inference that I will accept. But, Your Honor, he was just going so slowly that I do not know how this could possibly qualify. I don't know. Have you ever... You know, I've done a fair amount of cycling. Twenty-five, thirty miles an hour on something like a cycle seems a lot faster than it does in a car. Right. But it may seem faster. That might be why the passenger's afraid. You know why? Because you're unprotected. You don't have doors. You don't have, you know, a cabin that surrounds you. It is a different experience. Twenty-five, thirty miles an hour on a cycle is a different kind of experience. Yes. And they're not traveling on a sidewalk or a street. Correct, Your Honor. So they're going through yards. Through the front yards of houses. I don't think it was specified there was the front yards of houses. And again, there's no testimony that he was off of the path at any point. But he crossed driveways. That is what the testimony says. Well, that means he was going through the front yards. Not necessarily. It was not a level pass is what I'm saying. There was testimony that it was bumpy. But, Your Honors, again, the officer got out and chased the man on foot. He was going so slowly that the officer thought he could catch him on foot. And it is not, the standard is not drove in a manner that put his passenger in fear. It is demonstrated a wrong disregard for his safety. And that simply is not met. There's no reasonable argument that it is. And we'd ask, Your Honor, to reverse the district court with instructions to grant the writ. Okay. Ms. Strickland, I know you were court appointed. And we really appreciate you accepting the appointment. And you have done a fine job discharging that responsibility. We'll move to our last case.